IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT E. BAKER,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

OPINION & ORDER

12-cv-894-wmc

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Robert E. Baker seeks judicial review of a final determination by the Commissioner of Social Security finding that Baker was not disabled within the meaning of the Social Security Act. Baker contends that remand is warranted because the administrative law judge (1) erred in determining that Baker was a high school graduate within the meaning of 20 C.F.R. 416.964, (2) failed to properly assess Baker's credibility, and (3) failed to apportion proper weight to his treating physicians. For the reasons set forth below, the court will affirm the ALJ's decision.

## BACKGROUND

**I. Procedural History**

Baker previously filed a claim for Supplemental Security Income ("SSI") on August 8, 2008, alleging a disability due to kidney failure and mental illness. (AR 16.) On April 13, 2010, an ALJ denied Baker's claim for SSI due to a finding that Baker was not disabled through that date. (*Id.*) Baker filed an appeal and the Appeals Council affirmed the ALJ's decision on September 8, 2011. (*Id.*) Baker filed another SSI claim

on May 6, 2011. On January 4, 2012, ALJ William S. Coleman issued a decision denying Baker's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (AR 11.) On December 12, 2012, Baker filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g). (Dkt. #1.)

## II. Education Evidence

The parties dispute Baker's level of education. (Pl. Br. 3.) Baker claims that he only has a ninth grade education despite previously representing that he was a high school graduate to both the Department of Corrections and on disability applications filed in 2008 and 2010. (AR 79-80.) Baker claims that he purposely misrepresented his education level to avoid taking classes while in prison, but provides no explanation for the misrepresentations made on earlier disability applications. (*Id.*)

Baker has had no vocational training and has only worked a few short-term jobs in his life. (AR 81, 83-84.) Baker has not worked since holding a job briefly as a janitor in 2002; he has spent approximately fourteen of the previous fifteen years in prison. (AR 83.) While in prison, Baker performed a number of jobs, but was repeatedly fired from them. (AR 81.)

## III. Relevant Medical Evidence

### A. General

Baker has been diagnosed with medical problems dating back as far as 1996, including hypertension, hepatitis C, and reduced kidney function. (AR 317, 401.) In May 2008, a Medical Classification Report filed at the Department of Corrections

indicated that Baker was limited to "light activity", meaning that Baker was restricted from assignments that required any steadily paced activity. (AR 371.) The Report also indicated that Baker should be allowed to work at his own pace and should not be required to lift an object weighing twenty pounds or more. (*Id*.)

Baker has a history of gout and carpal tunnel syndrome, in addition to hypertension and hepatitis C. (AR 458.) In January of 2009, Baker was also diagnosed with chronic kidney disease, stage II. (*Id*.) On March 31, 2009, Baker was admitted to the hospital with right flank pain of an unknown cause and further diagnosed with renal insufficiency. (AR 492.) A subsequent examination in April 2009 noted Baker's lengthy medical history, including hypertension, gouty arthritis, renal failure, anxiety, depression, migraine headaches, and chronic hepatitis C. (AR 499.)

Since filing his application for SSI on May 6, 2010, Baker has had a number of consultations with medical professionals. (AR 570-690.) On May 10, 2010, Baker saw Dr. Alexander Young for a routine physical examination. (AR 584.) During the examination, Baker stated that he used street drugs about once per month. (*Id.*) Dr. Young confirmed that Baker had hepatitis C and chronic kidney failure with no acute complaints. (AR 586.) In July 2010, Baker again saw Dr. Young, complaining of mood problems, difficulty with memory, and auditory hallucinations. (AR 581.) Dr. Young also diagnosed Baker with loss of weight due to poor nutrition and mood disorder. (*Id.*)

**B.  Opinion of Dr. Richard Webb**

On October 15, 2010, Baker began visiting Richard Webb, M.D., complaining of continuing auditory hallucinations. (AR 688.) Baker claimed that the voices had

worsened over the previous six to eight months, telling him to "mess people up" on a daily basis. (*Id.*) Dr. Webb noted an extensive history of drug and alcohol abuse, including past cocaine and heroin use and current alcohol consumption in the form of one pint of hard liquor per day. (AR 689.) Dr. Webb found Baker subdued and depressed at times, but otherwise alert and oriented. (*Id*.) He also noted that Baker had an intact memory, spoke clearly and coherently, and had a logical thought process with no evidence of delusional thoughts. (*Id.*) Dr. Webb diagnosed Baker with psychotic disorder, along with a likely diagnosis of antisocial personality disorder. (*Id.*)

On November 15, 2011, Dr. Webb completed a medical assessment of Baker's mental impairments, again diagnosing Baker with psychotic disorder. (AR 676.) Dr. Webb opined that Baker exhibited illogical thinking; psychomotor agitation or retardation; a blunt, flat, or inappropriate affect; paranoia or inappropriate suspiciousness; difficulty thinking or concentrating; delusions or hallucinations; and social withdrawal and isolation. (*Id.*) Dr. Webb noted that such symptoms would frequently interfere with the attention and concentration Baker would need to perform simple tasks during a typical workday.[1] (*Id.*) Dr. Webb further opined that Baker would likely miss more than four days of work per month due to his impairments. (*Id.*)

Dr. Webb also reported on Baker's functional limitations due to his mental impairments. (AR 679-80.) He found Baker markedly limited regarding activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (AR 679.) Dr. Webb found that Baker was unable to meet competitive standards regarding

---

[1] "Frequently" is defined as occurring during 34%-66% of an eight-hour workday. (AR 676.)

4

his ability to interact appropriately with the general public, working with or near others without becoming distracted, completing a normal workday or workweek without being disrupted by psychological symptoms, accepting instruction and criticism from supervisors, and dealing with the stress of skilled and semi-skilled work.  (AR 680.)

### C. Opinion of Dr. Douglas Smith

Baker visited Douglas Smith, M.D., every month or two beginning in December 2010.  (AR 651-75.)  During his first visit, Baker complained of back pain that had been worsening and pain radiating down his left leg.  (AR 674.)  Dr. Smith initially diagnosed Baker with recurrent low back pain and limited range of motion, chronic renal insufficiency, and hypertension that was well-controlled.  (*Id.*)

Dr. Smith saw Baker an additional seven times in the ensuing ten months, mostly complaining of lower back pain and nocturia.  (AR 652-672.)  On October 13, 2011, Dr. Smith wrote a letter stating that Baker had moderately severe mechanical lower back pain preceding December 2010, along with chronic renal insufficiency, hypertension, depression, and chronic hepatitis C.  (AR 651.)  He also opined that Baker's medical limitations "significantly" interfered with his functioning.  (*Id.*)

On November 22, 2011, Dr. Smith performed a formal assessment of Baker.  (AR 646-50.)  Dr. Smith diagnosed Baker with severe low back pain, chronic renal insufficiency, and depression, while giving him "fair" prognosis.  (AR 646.)  Smith further opined that Baker's symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks, and that he should not be exposed to public contact, routine, repetitive tasks at a consistent pace, detailed or complicated

5

tasks, strict deadlines, fast paced tasks, and work hazards. (AR 647.) Dr. Smith also concluded that Baker would be able to walk one to two city blocks without experiencing severe pain; that he could only continuously sit for one hour and stand for one to two hours during an eight hour workday; that he could only sit and stand or walk for approximately two hours during an eight hour workday; and that he would likely need six, unscheduled breaks each lasting twenty minutes during the course of a workday. (AR 647-48.) Dr. Smith further opined that Baker would rarely be able to lift more than ten pounds, could rarely twist, and could occasionally bend. (AR 649.) Finally, he advised that Baker would likely miss about four days of work per month due to his physical impairments. (*Id.*)

### D. Opinions of State Agency Consultants

On October 20, 2010, Janis Byrd, M.D., examined Baker on behalf of the state agency. (AR 609.) Dr. Byrd opined that Baker could occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds, stand and walk for a total of approximately six hours in a normal workday, and sit for a total of approximately six hours in a normal workday. (AR 603.) She also found that Baker was unlimited in his ability to push and pull objects and faced no further postural, manipulative, communicative, or environmental limitations. (AR 603-606.) As a result, Dr. Byrd found Baker had a residual functional capacity ("RFC") for medium work. (AR 607.)

That same day, Susan Donahoo, Psy.D., examined Baker on behalf of the state agency. (AR 610.) Dr. Donahoo diagnosed Baker with antisocial personality disorder, but noted that his level of mental impairment was not severe. (AR 617.) Dr. Donahoo

opined that Baker was mildly limited in his restriction of daily activities, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation.  (AR 620.)

### E. Opinion of Dr. Deborah Pape

On March 30, 2011, state agency psychological consultant Deborah Pape, Ph.D., examined Baker.  (AR 625.)  Dr. Pape diagnosed Baker with mood disorder and a likely diagnosis of personality disorder with antisocial traits.  (AR 628, 632.)  Pape also found that Baker faced no functional limitation regarding activities of daily living; moderate limitations regarding social function; mild limitations regarding maintaining concentration, persistence, or pace; and no episodes of decompensation.  (AR 635.)  Dr. Pape further opined that Baker faced moderate limitations regarding his abilities to: maintain attention and concentration for extended periods; work with or near others without getting distracted; interact appropriately with the general public, accept instructions or criticism from supervisors; get along with coworkers or peers without distracting them or acting extremely; and respond appropriately to changes in the workplace.  (AR 639-40.)  Dr. Pape noted no further limitations, and found that Baker retained the basic mental capacity for unskilled work.  (AR 641.)

## III. ALJ Decision

At step one, the ALJ found that Baker had not engaged in substantial gainful activity since the day his application for SSI was filed on May 6, 2010.  (AR 13.)  At step two, the ALJ found that Baker had the following severe impairments: mild chronic kidney

disease, renal insufficiency, mood disorder, psychotic disorder, personality disorder with antisocial traits, and alcohol dependence. (*Id.*) At step three, the ALJ found that Baker had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) with the following limitations:

> [Claimant] is limited to unskilled work involving simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few , if any, workplace changes. He is limited to only occasional interaction with the public. He can be around coworkers throughout the workday but is limited to only occasional interaction with coworkers without tandem tasks and only occasional supervision.

(AR 15.)

At step four, the ALJ determined that Baker had no past relevant work. (AR 20.) At step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Accordingly, the ALJ found that Baker was *not* under a disability as defined in the Social Security Act, from May 6, 2010. (AR 21.)

## OPINION

A federal court reviews an ALJ's decision with deference and will uphold a denial of benefits unless it is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh

the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Secretary of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit appellate review." *Id. See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to her conclusion. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001).

After reviewing the record in this case, the court concludes that the ALJ did not err in analyzing Dr. Webb's or Dr. Smith's opinion. The court also finds no error in the ALJ's credibility findings. Because of this and because there is nothing in the record to show that the Appeals Council ignored purported evidence that Baker did not complete high school, the court will affirm the ALJ's original decision.

I. The ALJ's Rejection of Dr. Smith's and Dr. Webb's Opinions

As a starting point, the Seventh Circuit has repeatedly addressed the appropriate standard that the Commissioner must follow when weighing the opinions of a treating physician. In *Jelinek v. Astrue,* 662 F.3d 805 (7th Cir. 2011), the court explained that if a treating physician's opinion "is consistent with the record it is generally entitled to 'controlling weight' ... [and] an ALJ who chooses to reject a treating physician's opinion

9

must provide a sound explanation" for doing so. *Id.* at 811 (citing 20 C.F.R. § 404.1527(d)(2)); *cf. Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (ALJs may discount medical opinions based solely on the patient's subjective complaints); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Moreover, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the (1) length, nature, and extent of the treatment relationship; (2) frequency of examination; (3) physician's specialty; (4) types of tests performed; and (5) consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).

Although ultimately giving Dr. Smith's opinion little weight, the ALJ properly addressed most (if not all) of the relevant factors in detail. Moreover, the ALJ's written analysis allows for adequate review of his reasons for giving Dr. Smith's opinions limited weight despite the default rule. For instance, the ALJ not only recognized that that Dr. Smith was a treating physician (factor one), but he noted that the frequency of the relationship consisted of monthly visits since December 2010 (factor two). (AR 18.) The ALJ went on to point out that the Dr. Smith's conclusions were internally inconsistent and not supported by the overall evidence of the record (factor five). (*Id.*) The ALJ also went well beyond mere boilerplate in explaining how Dr. Smith's evidence was inconsistent. For example, the ALJ noted that Dr. Smith opined that Baker would be required to elevate his legs due to edema, despite there being no record of significant

edema in the medical record. (*Id.* at 19.) The ALJ also affords Dr. Smith's mental limitations little weight because there is "no indication that he has specific expertise in diagnosing, assessing, or treating mental impairments other than typically received by all medical doctors." (*Id.*) Accordingly, the ALJ's analysis of the relevant factors laid out in 20 C.F.R. § 404.1527(d)(2) is sufficient to pass muster.[2]

Baker also asserts that the ALJ failed to account for Dr. Webb's medical opinion. Contrary to Baker's brief, however, the ALJ noted the treating relationship between Dr. Webb and Baker, along with the frequency of that relationship (three visits since October 2010). (*Id.*) The ALJ further found Dr. Webb's findings only "partially supported by the overall evidence. (*Id.*)

More telling is the fact that while the ALJ adopted some of Dr. Webb's limitations in the RFC, there were others that he expressly rejected as inconsistent with the record. For example, the ALJ points out that the lack of any evidence of decompensation notwithstanding Dr. Webb's suggestion to the contrary. This level of explanation is sufficient to justify the ALJ's decision to give less weight to Dr. Webb's opinions. Indeed, where the ALJ has given a good account of the relevant factors as here, a district court cannot then disturb the weight afforded to the medical opinion. *See generally Scott*, 647 F.3d 734. Accordingly, the court finds no error in the ALJ's analysis of Dr. Webb's

---

[2] Buried in the Baker's brief is a paragraph that the ALJ did not consider Baker's testimony with respect to back pain. (Dkt. 11 at 23.) This evidence seems to be relevant to the exertional level that Baker could perform in the work environment -- *i.e.*, that he would be limited to a sedentary work. But the ALJ correctly rejected Dr. Smith's same sedentary designation. The ALJ also specifically addresses Baker's back pain at AR. 17, noting that there was no evidence of a spinal CT. He further notes that there was no "objective findings that establish any spinal abnormality" in the record. (*Id.*) The court finds little merit in Baker's assertion that the ALJ did not consider his back pain in the years leading up to December 2011.

opinion.

## II. Credibility Determination

Baker next challenges the ALJ's credibility finding.  Baker asserts that the ALJ's analysis is contrary to Social Security Ruling ("SSR") SSR 96-7.  Challenging a credibility finding, however, is an uphill battle given that the ALJ is in the best position to determine a witness's truthfulness and that a district court should not overturn a credibility finding unless it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  This, of course, does not mean the court is abdicating its supervisory role, but a credibility determination will be affirmed as long as the ALJ gives specific reasons that are supported by the record. *See Skarbeck v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

Here, there is little wrong with the ALJ's analysis of Baker's credibility, and certainly nothing that could be considered patently wrong.  The Commissioner's brief is replete with examples of the ALJ properly assessing Baker's credibility in line with the factors spelled out in SSR 96-7.[3]  Of these factors, two are particularly illustrative.

First, the ALJ questioned Baker's credibility in light of his contradictory statements regarding drug and alcohol use. (AR 17.)  During the administrative hearing,

---

[3] SSR 96-7 outlines the relevant factors, including: "The individual's daily activities; The location, duration, frequency, and intensity of the individual's pain or other symptoms; Factors that precipitate and aggravate the symptoms; The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

12

Baker testified that he had not used street drugs in the last two or three years, although he also reported using street drugs and marijuana from May through July, 2010, during visits to Access Community Health Care. (AR. 584, 579). The ALJ also noted that while Baker testified he last used alcohol in February 2011, Dr. Webb's treatment notes reported continued alcohol use at least through June 2011 despite previous recommendations to stop. (AR. 17, 676-690).

Second, the ALJ considered Baker's conflicting stories regarding his educational background. Contrary to Baker's testimony that he only had a ninth grade education, the ALJ noted that Baker reported completing high school on two previous disability applications in September 2008 and July 2010. (AR 225, 273.) Baker also reported lying about completing high school while incarcerated by the Department of Corrections to get out of educational programming. (AR. 360).[4] Based on this record, the ALJ could reasonably find Baker's conflicting stories regarding his high school education were evidence of false representations, which diminished his overall credibility. (*Id.*)

In sum, the court finds no reason to disturb the ALJ's credibility findings, particularly in a case where the inconsistencies between what the claimant has said in the past is directly at odds with what he stated in testimony before the ALJ. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (credibility determinations rarely disturbed by a reviewing court).

---

[4] Baker also claimed that he lied regarding his educational background in his application for benefits and in prior testimony . (Pl.'s Br. (dkt. #11) 18).

**III. New "Evidence" of Baker's Educational Background**

Baker asserts that additional documents were improperly ignored by the Appeals Council that would have supported a finding that he did not graduate from high school. Specifically, Baker asserts that the Appeals Council erred in refusing to consider additional documents purportedly establishing that he had a "limited education" within the meaning of 20 C.F.R. 416.964. Baker points to several new documents, contending that, if credited, they would place him in a more favorable category for the purposes of a supporting his disability claim. (AR. 313-320.) The court disagrees.

*First*, Baker's legal argument is cursory. There is no meaningful description of the new documents, nor how they support a finding that Baker did not complete high school. For example, one of the documents that Baker submitted was a "Secondary School Record" from Roosevelt High School "for year ending in June 1967". (AR. 313). This document, however, only indicates that Baker received grades in the summer of 1967, not that he failed to complete high school. Baker also submitted a "Pupil Withdrawal Transfer Form" from Charlton High School, dated December 1967. (AR 315.) However, this transfer form also fails to demonstrate that he never completed high school; rather, it shows that he "withdrew" or "transferred" from Charlton High School in 1967. Indeed, the document itself states that the "issued [form is] to be presented to receiving school for enrollment." (*Id.*)

While the court can appreciate the inherent difficulty in proving a negative, such as the non-completion of high school, Baker prevents any inferences being made in his favor (based on new documents) when he previously represented in earlier disability

applications and to prison authorities that he *did* complete high school. (Dkt. #11 at 18.) Without a showing that these additional documents legally trump his previous representations and testimony, the court has no basis but to hold the Appeals Council decision. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011).

*Second*, the Appeals Council expressly stated that it reviewed "additional evidence listed on the enclosed Order of Appeals Council," finding that the "information does not provide a basis for changing the Administrative Law Judge's decision." (AR 2.) Unlike ALJ decisions, Appeals Council notices have no articulation requirement. *See Damata v. Sullivan*, 945 F.2d 982, 989 (7th Cir. 1992) ("The Appeals Council may deny review without articulating its reasoning.") Because of this, the court can find no fault in the fact that the Appeals Council did not fully articulate the reasons for it decision to affirm the ALJ's decision here.

*Third*, even if the Appeals Council failed to properly consider Baker's additional documents, the error is harmless. *See Sanchez v. Barhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("errors, if harmless, do not require the reviewing court to upset the agency's decision"); *see also Rabbers v. Comm'r of Social Security*, 582 F.3d 647, 654 (6th Cir. 2009) ("courts are not required to convert judicial review of agency action into a ping-pong game where remand would be an idle and useless formality"). Were the court to remand the decision, the ALJ could only consider the new evidence in light of its earlier findings. As explained earlier, however, there is nothing in this evidence that directly contradicts

the ALJ's original decision based on a substantial evidence standard of review. Indeed, Baker's own earlier statements against interest (*i.e.,* that *he did* complete high school) are alone enough to substantiate the ALJ's original conclusion that Baker was not disabled under the statute. *See Perales*, 402 U.S. at 401 (Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").[5]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is **AFFIRMED**, and that plaintiff Robert E. Baker's appeal is **DISMISSED**. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of September, 2014.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[5] If, however, there is further evidence that comes into existence following this appeal, nothing stops Baker from again applying to the Social Security Administration for benefits.